UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

SE PROPERTY HOLDINGS, LLC, an
Ohio limited liability company,

    Plaintiff,

v.                              CASE NO.: 5:12-cv-00140-RS-CJK

RANDALL A. MCELHENEY, individually,
JAMES T. KEARCE, JR., individually,
RALPH P. RISH, individually, CAPITAL
CITY BANK, a Florida corporation,
CENTENNIAL BANK, an Arkansas banking
Corporation, and PNC BANK, National
Association,

    Defendants.
_____/

## ORDER

Before me are Plaintiff's Proposed Findings of Fact, Conclusions of Law and Final Deficiency Judgment (Doc. 162), and the Notice of Filing Proposed Order Containing Findings of Fact and Conclusions of Law Following Evidentiary Hearing by Defendant Randall McElheney (Doc. 161). An evidentiary hearing was held on October 17, 2014 and December 16, 2014, to consider Plaintiff's February 5, 2014, Motion For Entry Of Deficiency Judgment And Incorporated Memorandum of Law (Doc. 109), and Defendant Randall McElheney's "Unclean Hands" affirmative defense.

The questions to be determined at trial were: (a) what was the fair market value of the foreclosed property as of April 15, 2013; and (b) whether the Plaintiff had unclean hands such that any deficiency should be not awarded or reduced. Having considered: (i) the parties written submissions, (ii) the argument of counsel, (iii) the live testimony and cross examination of Wayne "Chip" Johnson, Walt Abbott, Randall McElheney, Scott Robertson, and Ralph P. Rish, and (iv) other evidence presented at the hearing, I make the following Findings of Fact and Conclusions of Law.[1]

## BACKGROUND

The testimony at trial was uncontroverted that the loan that is the subject of this case went into payment default in 2009. After the payment default, the Plaintiff (including its predecessor, Vision Bank) and the Defendants had numerous meetings starting in early 2010 to try to negotiate a resolution of the defaulted loan. On May 11, 2012, Plaintiffs filed this lawsuit seeking to foreclose the relevant mortgage and to recover under the relevant loan documents that obligated the repayment of the loan. On February 15, 2013, the final judgment of foreclosure was entered. A foreclosure sale was held on April 15, 2013.

At the evidentiary hearing, the Plaintiff and the Defendant each commissioned appraisals of the foreclosed property and each presented expert

---

[1] Due to his pending Chapter 7 Bankruptcy proceedings, this matter is stayed as to Defendant, Ralph P. Rish ("Rish") and therefore no relief will be entered as to Rish.

testimony regarding the value of the relevant property on the date of the foreclosure sale. Wayne Johnson testified as an expert witness on behalf of Plaintiff. Mr. Johnson is a certified general real estate appraiser in Florida and Georgia and holds the MAI designation from the Appraisal Institute. Mr. Johnson conducted his appraisal of the subject property in approximately May of 2013, with an effective date of April 15, 2013, the date of the relevant foreclosure sale. During the hearing, Mr. Johnson testified that pursuant to Statement Number 3 of the Uniform Standards of Professional Appraisal Practice, as well as common industry standards, data which post-dates the effective date should typically not be considered by an appraiser in a retrospective valuation. Therefore, he testified that in his opinion the fair market value of the subject property as of April 15, 2013, was $350,000.00.

Mr. Walt Abbott testified as an expert witness on behalf of Defendant Randall McElheney.  Mr. Abbott is a Florida certified general appraiser and also holds the MAI designation from the Appraisal Institute. Mr. Abbott conducted his appraisal of the subject property in June 2014, more than one year after the foreclosure sale date and considered comparable sales which occurred after the effective date. He testified that in his opinion the fair market value of the subject property as of April 15, 2013, was $513,000.00.

After considering all of the evidence presented, including the opinions of the respective experts, I find that the fair market value of the mortgaged property as of the foreclosure sale date was $350,000.00.

Additionally, Defendant McElheney contends that Plaintiff has "unclean hands" and, therefore, Plaintiff should not be entitled to any deficiency judgment or, alternatively, the amount of the deficiency judgment should be reduced. Specifically, McElheney asserts that in early May 2010, he entered into an oral settlement agreement with Plaintiff, on the following terms:

    a. Plaintiff's predecessor, Vision Bank, would select an MAI appraiser to conduct an appraisal of the property;

    b. McElheney and co-Defendant Rish would be credited with the appraised value of the property;

    c. the amount due on the loan would be calculated based upon note rate of interest, as opposed to default rate;

    d. the loan deficiency liability would be split 50/50 between Ralph Rish and McElheney (as opposed to jointly and severally); and

    e. Vision Bank would agree to a friendly foreclosure or deed in lieu of foreclosure of the real property.

Defendant claims that Plaintiff reneged on this oral settlement agreement, purportedly because a consultant hired by Vision Bank, Bob Myers, was dissatisfied that the appraisal of the property was too high.

Scott Robertson, who was the loan officer in charge of the banking relationship with McElheney and Rish, testified as a lay witness. Mr. Robertson testified that the parties met numerous times over the course of several years and discussed multiple potential workouts of the subject loan, but that no settlement agreement was ever reached. Mr. Robertson further testified that during these meetings, the Defendants were advised that no potential settlement would be considered effective until it was reduced to writing and signed by the parties.

Although McElheney and Rish both testified that Scott Robertson was not present at the meeting in early May 2010, at which the alleged oral settlement agreement was reached, Mr. Robertson testified that even had he not been present for this alleged meeting, as the loan officer in charge of the banking relationship, he would have nevertheless been advised of a settlement as he would have been the person in charge of creating any necessary paperwork. Moreover, at all relevant times the Plaintiff had systems in place that assured that Robertson was kept apprised of the status of negotiations associated with the relevant loan. Robertson further testified that neither of the Defendants complained or contended that a deal

had been reached with the Plaintiff until the defense of unclean hands was raised in this litigation.

None of the e-mails or other pieces of documentary evidence admitted at trial by the Defendant corroborated the Defendant's position that an oral settlement agreement was reached in May 2010. To the contrary, the documentary evidence presented by the Defendant showed that the parties continued to discuss proposals, concepts and ideas as late as October 2012. This indicates that the parties had not reached an agreement. Moreover, the Defendant did not present any documentary evidence that embodied the terms of the alleged oral settlement agreement and did not present any documentary evidence that evinced any complaint or protest by the Defendant that a binding settlement agreement had been reached at any point in time. This again indicates that no binding settlement agreement was ever reached.

## ANALYSIS

Under Florida law, "[t]he granting of a deficiency judgment is the rule rather than the exception." *Lloyd v. Cannon*, 399 So. 2d 1095, 1096 (Fla. 1st DCA 1981). Further, "the burden of proof is placed on the defendant asserting the affirmative defense." *Hough v. Menses*, 95 So. 2d 410 (Fla. 1957). "Unclean hands is an equitable defense that is akin to fraud; it's 'purpose is to discourage unlawful activity.'" *Congress Park Office Condos II, LLC v. First-Citizens Bank & Trust Co.*, 105 So.3d 602, 609 (4th DCA 2013) (internal citation

omitted). Unclean hands is equated with "sneaky and deceitful," or "[u]nscrupulous practices, overreaching, concealment, trickery or other unconscientious conduct." *Id.* (citation omitted).

Like fraud, the party seeking to apply the unclean hands doctrine must describe with precision the "egregious facts" that justify application of the doctrine. *Id*. at 609-10. A simple of breach of contract does not constitute unclean hands. *Id.* at 610. ("A failure to comply with material terms of a loan document may be a breach of contract, and it may not be nice, but it does not amount to unclean hands."). Importantly, Defendants McElheney and Rish admitted that no workout agreement was ever signed by the parties.

Further, McElheney presented no written evidence memorializing or corroborating the terms of this alleged settlement agreement. The only evidence Defendant McElheney presented in support of the assertion that the parties had agreed to a settlement was Defendants McElheney's and Rish's own self-serving testimony that they attended a meeting and orally agreed to the terms listed above. However, the three e-mails admitted into evidence by Defendant McElheney in support of his defense actually undermine his position that the parties agreed to a settlement in May 2010, containing the five terms listed above.

Those e-mails establish, and the testimony of Scott Robertson confirms, that the alleged oral settlement agreement advanced by Defendant McElheney is

actually an amalgamation of provisions from three separate conversations spanning some fifteen months (some which do not even involve Rish). *See* Defs.' Exhs. 4, 5, and 6 (dated July 8, 2010, August 6, 2011, and October 3, 2011, respectively). Thus, the preponderance of the evidence indicates that the parties did not reach a binding oral settlement agreement because there was no meeting of the minds as to the relevant material terms.

Moreover, in support of his "unclean hands" defense, the Defendant asserts that after reaching an agreement in early 2010, Bob Myers, who was a consultant for the Plaintiff, was dissatisfied with the value of the 2010 appraisals. Therefore, according to Defendant, the Plaintiff delayed consummation of any settlement agreement until a new appraisal could be obtained in which the value of the collateral would decrease. The Defendant did not present any proof that the Plaintiff purposely delayed consummation of a binding oral settlement agreement.

In addition to the lack of proof of any deliberate delay, I find that any delay by the Plaintiff in consummating any agreement would have not in any way benefitted the Plaintiff and, therefore, this allegation defies logic. The record is uncontroverted that at the time of the alleged oral settlement agreement the real estate market was continuing to decline. Therefore, the Plaintiff's interests would have been served by reaching an agreement sooner rather than later. The testimony revealed that at the time of these negotiations, both Defendants Rish and

McElheney were already facing several million dollars in judgments held by other banks.  Therefore, any recovery from Defendants McElheney and Rish personally on the defaulted note would have been unlikely. Accordingly, Plaintiff's best chance at maximizing its recovery would have been to sell the property at a higher, rather than lower, sale price.  Therefore, I find that the Defendant's argument that the Plaintiff "dragged its feet" or intentionally delayed to not be supported by evidence or logic.

Based on the foregoing, I find that Defendant has failed to meet his burden of proof to establish that: 1) the parties entered into an oral settlement agreement; or 2) that any of Plaintiff's actions or inactions justify application of the unclean hands doctrine. *Ocean View Towers, Inc. v. First Fidelity Sav. & Loan Assoc.*, 521 So. 2d 325 (Fla. 4th DCA 1988) (noting mortgagor presented no documentation to support claim of unclean hands and only evidence presented was its own self-serving testimony).

## AMENDED FINAL JUDGMENT

The relief requested in Plaintiff's Motion For Entry Of Deficiency Judgment And Incorporated Memorandum of Law (Doc. 109) is **GRANTED**.  Accordingly, **IT IS ORDERED**:

1. That this Amended Final Judgment amends and supersedes the February 15, 2013, Final Foreclosure And Money Judgment (Doc. 73) to the extent that it reduces the amount due to the Plaintiff from Defendant McElheney.

2. That Plaintiff, S.E. Property Holdings, LLC, 50 North Third Street, Newark, Ohio 43055, shall recover from Borrower Defendant, Randall A. McElheney, 132 Harrison Avenue, Panama City, Florida 32401 the sum of $2,206,424.71, plus interest at the legal rate defined by 28 U.S.C. § 1961 from April 15, 2013 until paid, all for which let execution issue forthwith.

3. I reserve jurisdiction to consider a motion for an award of costs and attorneys' fees. Any motion to assess costs and award attorneys' fees must be filed not later than February 27, 2015. Notwithstanding the preceding sentence, the Plaintiff is entitled immediately to pursue all rights and remedies to collect this amended judgment as provided under applicable law.

**ORDERED** on February 6, 2015.

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**